**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SHANNON-POCAHONTAS MINING
COMPANY,
Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR;
ALBERT T. BLEVINS,
Respondents.

No. 95-2279

On Petition for Review of an Order
of the Benefits Review Board.
(94-0272-BLA-A)

Submitted: November 19, 1996

Decided: December 4, 1996

Before HAMILTON and LUTTIG, Circuit Judges, and PHILLIPS,
Senior Circuit Judge.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

William T. Brotherton, III, SPILMAN, THOMAS & BATTLE,
Charleston, West Virginia, for Petitioner. Christian P. Barber, Jill M.
Otte, UNITED STATES DEPARTMENT OF LABOR, Washington,
D.C.; William Burton Talty, Richmond, Virginia, for Respondents.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Shannon-Pocahontas Mining Company (employer) petitions for review of a decision of the Benefits Review Board (Board) affirming the administrative law judge's (ALJ) decision to award black lung benefits to Albert Blevins. We must affirm the decision of the Board if the Board properly decided that the ALJ's findings are supported by substantial evidence. <u>Doss v. Director, Office of Workers' Compensation Programs</u>, 53 F.2d 654, 658 (4th Cir. 1995). With this principle in mind, we vacate the decision of the Board, and remand to the Board with instructions to remand to the ALJ for further proceedings.

The employer contends that the ALJ's finding of total disability due to pneumoconiosis is not supported by substantial evidence. We agree. The evidence relevant to the issue of disability in this case consisted of ventilatory studies, blood gas studies, and medical reports. None of the miner's ventilatory studies revealed evidence of disability under the regulatory criteria for assessing disability. Of the miner's five resting blood gas studies and two exercise studies, one resting study produced values presumptive of disability under the regulations. Finally, Drs. Robinette and Cardona opined that the miner was totally disabled due to pneumoconiosis, while Drs. Zaldivar and Vasudevan found that the miner had no pulmonary impairment.

In finding total disability, the ALJ primarily relied on the report of Dr. Robinette, although he also credited Dr. Cardona's report. He found that the reports of Drs. Zaldivar and Vasudevan failed to negate Dr. Robinette's report, which he found was supported by the blood gas evidence. He did not find the objective studies, viewed in isolation, indicative of disability under 20 C.F.R. § 718.204(c)(1) & (2) (1996).

Dr. Robinette testified at his deposition that his finding of total disability was based primarily on the miner's ventilatory response to

2

exercise during an exercise blood gas study performed by Dr. Vasudevan in January 1991. He believed that the miner's resting blood gas tests of January and February 1991 demonstrated hypoxemia and thus provided further evidence of disability, but admitted that without the evidence of the miner's intolerance to exercise during this study he would not have concluded that the miner was totally disabled. Dr. Vasudevan intended to measure the miner's anaerobic threshold during this study by exercising him for ten minutes on a treadmill, but the miner voluntarily terminated the study after five minutes based on his complaints of shortness of breath and leg fatigue. Dr. Vasudevan did not believe any valid conclusions could be drawn from the study because it ended prematurely, and did not find the miner's inability to continue indicative of a respiratory problem because the miner exhibited no objective signs of pulmonary or cardiac problems during the test. Rather, he attributed the miner's inability to continue to deconditioning and obesity.

Dr. Robinette interpreted the study differently, opining that it demonstrated an intolerance to exercise severe enough to preclude the miner from performing his usual coal mine work as an end loader. He found that the miner's high tidal volume during the test indicated a mild to moderate respiratory impairment. After reviewing Dr. Robinette's deposition, Drs. Zaldivar and Vasudevan both stated that the miner's large tidal volume during the test was no reason for concern because it progressively decreased with exercise and because all other pulmonary parameters were normal. They noted, for example, that the miner's PO2 actually improved with exercise. Dr. Zaldivar opined that the miner's large tidal volume was due to hyperventilation due to anxiety. He commented that the miner also exhibited hyperventilation due to anxiety during the exercise blood gas study that he performed.

We agree with the employer that the ALJ failed to adequately resolve the conflict between the physicians of record regarding the significance of the miner's ventilatory response to exercise during Dr. Vasudevan's exercise blood gas study. An ALJ is required to explain his reasons for crediting one physician over another. See Peabody Coal Co. v. Hale, 771 F.2d 246, 249 (7th Cir. 1985). Moreover, given Dr. Robinette's admission that his entire opinion hinged on his inter-

3

pretation of the miner's performance during this study, resolution of this conflict was critical to the outcome of this case.

The ALJ did not overlook the study. His opinion discusses Dr. Robinette's views of the study. His opinion, however, does not discuss the contrary views of Drs. Zaldivar and Vasudevan concerning the study, and, most importantly, does not explain why Dr. Robinette's interpretation of the study is more credible than the opposing view. We note that the need for the ALJ to provide a rationale was particularly strong in view of the fact that he credited the opinion of a consulting physician over the opinion of the physician who actually performed the study. See Siegel v. Director, Office of Workers' Compensation Programs, 8 BLR 1-156 (1986).

In according greatest weight to Dr. Robinette's report, the ALJ relied on his finding that the blood gas evidence--specifically, the resting studies of January and February 1991--supported Dr. Robinette's conclusions. The ALJ found that the blood gas evidence demonstrated that the miner had hypoxemia on "several different occasions," that this evidence demonstrated that Dr. Zaldivar's finding of no pulmonary impairment "in fact was not true," and that Dr. Zaldivar chose to ignore this evidence. He acknowledged that the miner's $PO_2$ values on resting and blood gas testing had fluctuated greatly, but found that Dr. Robinette had demonstrated through reference to medical literature that such variations were normal.

There are two problems with the ALJ's finding that the miner exhibited hypoxemia "on several occasions." First, it mildly overstates the case, because the miner's studies only arguably evinced hypoxemia on two occasions. Second, the statement wrongly implies that the miner's condition has remained constant over time. In fact, studies performed before and after the two month period in which the miner exhibited abnormal test results were undisputedly normal.

We also find that the ALJ impermissibly made a medical determination by concluding that the blood gas evidence proved that Dr. Zaldivar's finding of no impairment was untrue. An ALJ may not interpret medical data and substitute his opinion for that of a physician. See Marcum v. Director, Office of Workers' Compensation Programs, 11 BLR 1-23 (1987). Because no physician found the

4

blood gas evidence sufficient, alone, to support a finding of impairment, the ALJ could not make this finding. Moreover, contrary to the ALJ's finding, Dr. Zaldivar did not ignore the miner's qualifying and nearly qualifying resting blood gas studies. Rather, he agreed with Dr. Vasudevan that the results of these studies varied too much from the other studies, indicating that the results were either not valid due to technical problems with the administration of the tests, or that the miner had an acute problem in January and February 1991 that later resolved. Drs. Zaldivar and Vasudevan both also noted that hypoxemia at rest was not significant because the miner's blood gases returned to normal after exercise.

The ALJ also erred in his discussion of the variation between the miner's blood gas results. In resting studies, the miner's PO2 varied from 64 to 100, and in exercise studies, his PO2 varied from 83 to 102. The ALJ stated that Dr. Robinette's medical literature explained that the variance was normal. In fact, Dr. Robinette admitted that the variance was abnormal because it exceeded 15 percent, and that his references to medical literature were purely academic in this case and did not support his finding of total disability.*

We therefore conclude that the ALJ erred in finding that the miner established a totally disabling respiratory impairment. We also find that he erred, however, in finding that any impairment the miner might have was due to pneumoconiosis. He apparently based this determination on the miner's lengthy history of coal dust exposure and his finding that neither Dr. Zaldivar nor Dr. Vasudevan offered any alternate medical explanation for the miner's shortness of breath. The employer correctly argues on appeal that it was not required to prove an alternate cause for the miner's respiratory symptoms, but that in any event Dr. Vasudevan did so when he opined that the miner's shortness of breath was due to a combination of deconditioning and obesity. While the ALJ noted Dr. Vasudevan's reference to the miner's obesity, he rejected it apparently based on his belief that, at 5⌐9<!DAG> and 186 pounds, the miner was not obese. We find, however,

_____

*Regarding the literature, we also note that Dr. Zaldivar's comments concerning the extent to which bronchitis may be disabling were a response to points made in the literature cited by Dr. Robinette, and are irrelevant to this case.

5

that whether the miner is obese, and whether his weight could be a factor contributing to shortness of breath, is yet another medical determination which must be made by a physician.

We therefore vacate the decision of the Board affirming the ALJ's finding of total disability due to pneumoconiosis, and remand to the Board for further remand to the ALJ for reconsideration of the evidence consistent with this opinion. On remand, the ALJ should reweigh all four medical opinions, and all other relevant evidence, which addresses disability. We reject the employer's contention that Dr. Cardona's opinion may not be considered because it is hostile to the Black Lung Benefits Act. Contrary to the employer's assertion, Dr. Cardona does not state that all persons having lengthy coal mine employment histories must be considered totally disabled. Rather, he stated that most would be, and explained that his finding in this case was based on the claimant's particular history, symptoms, and physical examination. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

VACATED AND REMANDED

6